**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1673
_____

CARLOS ABRAHAM BAIRES-RIVAS,
                                                            Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A205-015-801)
Immigration Judge: Richard Bailey
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 10, 2026

Before: MATEY, MONTGOMERY-REEVES, and NYGAARD, *Circuit Judges*

(Opinion filed August 12, 2026)
_____

OPINION*
_____

PER CURIAM

     Carlos Baires-Rivas petitions for review of his final order of removal.  We will

deny the petition.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

I.

Baires-Rivas is a citizen of El Salvador who entered the United States without authorization in 2008. The Government charged him as removable on that basis. Baires-Rivas conceded the charge but applied for several forms of relief from removal, including relief under the Convention Against Torture ("CAT"). That application is the only one before us because Baires-Rivas did not appeal the denial of his other applications to the Board of Immigration Appeals ("BIA") and likewise has not challenged them here.

Baires-Rivas's CAT application had two aspects. First, he claimed to fear torture by the Salvadoran government. He based that claim primarily on the "state of exception" that the Salvadoran government declared in 2022 to combat gang violence. Although Baires-Rivas asserted that he never belonged to a gang, he claimed that the Salvadoran government will detain him as a suspected gang members because he has five non gang-related tattoos (two of which he claimed could be mistaken for gang-related tattoos) and because he was arrested as a minor for illicit gathering and drinking in public. Second, Baires-Rivas also claimed to fear torture by a Salvadoran gang known as the 18th Street Gang. He based that claim on some threats he received in 2008 when that gang suspected that he was passing information to a rival gang.

An Immigration Judge ("IJ") heard Baires-Rivas's testimony and received other evidence on these points. The IJ found Baires-Rivas credible but denied his CAT application because he also found that Baires-Rivas did not carry his burden of proving that he likely would be tortured in El Salvador by either the Salvadoran government or the 18th Street gang and that he was not likely to be tortured even considering the risk of

2

torture from those two sources in the aggregate. *See Kamara v. Att'y Gen.*, 420 F.3d 202, 213-14 (3d Cir. 2005). As to the Salvadoran government, the IJ acknowledged Baires-Rivas's country reports and articles reporting that the government has detained some individuals as suspected gang members on the basis of prior contacts with the criminal justice system and tattoos that are not gang-related. But the IJ found that Baires-Rivas failed to prove that the Salvadoran government would detain him as a suspected gang member because his contacts with the criminal justice system were minor and occurred over 15years ago and because he provided no evidence that the government might mistake his particular tattoos for gang-related tattoos. And as to the 18th Street Gang, the IJ reasoned that Baires-Rivas provided no evidence of any threats from the gang in the more than 15 years since he has been in the United States.

Baires-Rivas appealed the denial of his CAT application to the BIA, but the BIA dismissed his appeal on the merits. He now petitions for review.[1]

## II.

We will deny the petition. Baires-Rivas raises a number of arguments on review, but most do not warrant discussion.[2] We address only his arguments that the IJ

---

[1] We have jurisdiction under 8 U.S.C. §§ 1252(a)(1) and (4). *See Laureano v. Att'y Gen.*, 177 F.4th 453, 456-60 (3d Cir. 2026). We review the IJ's and BIA's decisions together because the BIA affirmed and substantially relied on the IJ's decision. *See Guzman Orellana v. Att'y Gen.*, 956 F.3d 171, 177 (3d Cir. 2020). We review factual findings for substantial evidence and may not disturb them "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Galeas Figueroa v. Att'y Gen.*, 998 F.3d 77, 91 (3d Cir. 2021) (quoting 8 U.S.C. § 1252(b)(4)(B)). We review legal issues de novo. *See id.* at 93.

[2] Baires-Rivas argues, for example, that the IJ failed to consider the prospect of torture by the Salvadoran government and the 18th Street gang in the aggregate, but the

inadequately considered his claim that the Salvadoran government will detain him as a suspected gang member and then torture him. The IJ denied this claim because he found that the Salvadoran government would not likely detain Baires-Rivas to begin with.

Baires-Rivas argues that the IJ failed to meaningfully consider his evidence on this point. But the IJ expressly acknowledged that evidence and found it insufficient. The IJ's explanation was terse, but it was sufficient because he acknowledged the relevant aspects of Baires-Rivas's evidence and gave reasons for rejecting it. *See Green v. Att'y Gen.*, 694 F.3d 503, 508-09 (3d Cir. 2012); *cf. Quinteros v. Att'y Gen.*, 945 F.3d 772, 787 (3d Cir. 2019) (faulting the BIA for stating that there was no other evidence on the significance of a tattoo when in fact the petitioner presented a study on that issue that is not of record in this case). The IJ thus "announce[d] its decision in terms sufficient to enable a reviewing court to perceive that [he] has heard and thought and not merely reacted." *Zhu v. Att'y Gen.*, 744 F.3d 268, 278 (3d Cir. 2014) (cleaned up).

Baires-Rivas also argues that the IJ "misread" the 2023 Human Rights Report, which he claims establishes that the government will single him out for detention because

---

BIA properly rejected that argument because the IJ expressly did so. (BIA Dec. at 2; IJ Dec. at 11.) Baires-Rivas also argues that the IJ "ignored" evidence supporting his claims. The only such evidence he identified is his testimony that (1) police officers beat him during his prior arrests, and (2) gang members previously "tortured" him during a soccer match. But once again, the IJ expressly considered this evidence. (IJ Dec. at 6-8.) In addition, while Baires-Rivas argues that the agency should have "accepted" his testimony, the IJ expressly found him credible. (IJ Dec. at 3.) And although Baires-Rivas argues that the IJ failed to address whether the Salvadoran government would acquiescence in torture, the BIA properly explained that there was no need to do so because the IJ found that Baires-Rivas did not show a likelihood of being tortured in the first place. (BIA Dec. at 2.)

4

of his tattoos even though they are not gang-related. (*E.g.,* A.651-52) (reporting that "many detainees" were arrested "without evidence of gang affiliation and only for having tattoos or living in gang-controlled areas" and that some were charged with being a gang member "for having a tattoo, with no indication if the tattoo was gang-related"). But while this evidence might show a *possibility* that the Salvadoran government will detain Baires-Rivas as a suspected gang member, it does not compel the conclusion that this prospect is more likely than not as required for success on his CAT claim. *See Gutierrez v. Garland*, 106 F.4th 866, 880 (9th Cir. 2024). It thus does not permit us to disturb the IJ's ruling given our deferential substantial-evidence standard of review. *See Galeas Figueroa*, 998 F.3d at 91.

III.

For these reasons, we will deny the petition for review. The Government's motion to dismiss the petition as untimely is denied as well.[3]

---

[3] Baires-Rivas mailed his petition for review from detention, and his petition is timely under 8 U.S.C. § 1252(b)(1) as dated, but the Government argues that we should deem it untimely because he has not shown compliance with the prison mailbox rule. We need not address that issue because the § 1252(b)(1) deadline is not jurisdictional, *see Laureano*, 177 F.4th at 456, and because the Government argues in the alternative that we should deny the petition on the merits, which we are doing.